UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JOHN T. RAMEY                               )
                                            )
v.                                          )               No. 2:09-CV-196
                                            )
VACUMET CORPORATION                         )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Vacumet Corporation's ("Vacumet") motion for summary judgment, [Doc. 32]. The plaintiff has responded, [Doc. 39], Vacumet has replied, [Doc. 40], and the matter is ripe for review. For the following reasons, the motion is **DENIED**.

## I. FACTS

According to the facts set forth by the plaintiff, plaintiff worked for Vacumet in 2007 in addition to earning income from owning rental property. Vacumet's employees are represented by the United Steelworkers Union, Local 9-733 ("the Union"). The plaintiff had been the leader of the Local Union for years. Immediately prior to his termination, he led a legal strike by the Vacumet employees over a contract renewal issue.

Pursuant to the collective bargaining agreement in place, and under work rules in effect at the time of his termination, a Level 3 violation of the rules warranted

discharge.  The following Level 3 offenses are relevant to the case at hand:

**2. Job Performance**

. . .

Level 3 offenses include actions such as:

• Insubordination (The refusal to perform any service
connected with an employee's job as required by the
employee's immediate supervisor or to obey any
reasonable order given by any member of Management
unless the order was dangerous, illegal, or immoral).

. . .

**7. Honesty & Integrity**

. . .

Level 3 offenses include actions such as:

• Misrepresentation of physical condition or other facts in
seeking employment, maintaining employment, or
avoiding work responsibilities.

• Misrepresenting the reasons for a leave of absence.

In June 2007, plaintiff's rental property was undergoing changes,
including new tenants, repainting, and remodeling.  Once these changes were made,
the plaintiff planned to re-let the apartment, the bottom portion of the property.  The
top portion had been leased, and it was going to be used as a market.

On June 3, 2007, the plaintiff left work due to illness.  The plaintiff was

-2-

already scheduled to be off on June 4 and 5. The plaintiff was scheduled to work on June 6, but he called in sick. That night, he attended a church service; the church is approximately 55 miles from his home. The plaintiff again called in sick to work on June 7. At that time, he did not indicate that he wished to take FMLA leave.

On June 7, the plaintiff cared for his girlfriend's sons. At approximately 12:30 p.m. on that day, he took the boys to a Krystal Restaurant for lunch. Vacumet employee Todd Berger saw the plaintiff's truck at the restaurant. Berger observed the plaintiff leave the restaurant and drive west.

Upon returning to work, Berger informed the plaintiff's immediate supervisor, Jerry Roberson, of what he observed. Berger and Roberson then drove to the plaintiff's rental property. They observed the plaintiff's truck in the rental property's driveway. They also saw the plaintiff push a wheelbarrow loaded with debris [1] up a gravel driveway and then dump it into a large pile of trash on the side of the road. This occurred at around 2:00 p.m. on that same day, June 7.

Berger and Roberson left to obtain a video camera and pick up a Vacumet manager. Upon arriving back at the rental property, Berger felt that the plaintiff identified them as they observed his activities. The plaintiff left his rental property at that time. Berger observed that the trash pile was larger than what he had observed

---

[1] Vacumet claims that Ramey pushed a "wheelbarrow that weighted [sic] approximately 60 pounds up an incline . . .," without any citation to the record. *See* Doc. 40, p. 9.

-3-

it being when they left to retrieve a video camera.

Berger and Roberson returned to Vacumet. On the drive back, they saw the plaintiff at a convenience store and videotaped his actions. The plaintiff realized he was being videotaped at approximately 3:00 p.m. that afternoon. Once Berger returned to Vacumet, he spoke with Gloria Dalton, the plaintiff's girlfriend. Dalton said she was not sure if the plaintiff was working at the rental property while on sick leave. Dalton then called the plaintiff and informed him that she had been questioned about his actions.

On the evening of June 7, the plaintiff went to a walk-in clinic at around 6:15 p.m. This was his first visit to a doctor since leaving work sick on June 3. Then, on June 8, the plaintiff again called in sick. At this time, he requested FMLA leave.

Per the plaintiff's normal schedule, he had June 9 and 10 off. The plaintiff again attended a church service 55 miles from his home on the 10th. The plaintiff called in sick again on June 11 because "his stomach was hurting" and he had "diarrhea." That evening, he visited his family doctor.

The plaintiff was scheduled to be off from work on June 12 in order to conduct Union business. He conducted the Union business that day. That same day, Roberson, Berger and Union representative Rodney Raines met with the plaintiff to discuss his FMLA leave. The plaintiff informed them that he was requesting FMLA

-4-

leave. They also asked the plaintiff about his activities at his rental property. The plaintiff responded by saying his activities were not any of Vacumet's business.

After the meeting, Vacumet suspended the plaintiff pending further investigation. He was asked to provide documentation of his doctor visits. The plaintiff provided this information on June 18. This documentation included certification from his family doctor of his inability to work from June 6 to June 11 due to sinusitis and bronchitis. However, the plaintiff admits that he did not visit his family doctor until June 11.

Then, on June 25, 2007, Vacumet denied the plaintiff's FMLA leave. Berger met with the plaintiff again on June 29. The plaintiff restated that his activities at the rental property were not Vacumet's business. Berger then decided to offer the plaintiff a Last Chance Agreement subjecting the plaintiff to a 12-month probationary period in lieu of termination. The plaintiff declined the Agreement. Then on July 20, 2007, Vacumet terminated the plaintiff's employment for committing the two Level 3 offenses set forth above.

After filing suit, the plaintiff testified that on June 7 he attempted to get an appointment with his family doctor, but was unable to do so. He was referred to a walk-in clinic. He further testified that he did not perform work at the rental property while on leave on June 7. He did, however, remove trash from the rental

property because it was blocking the hallway. Berger acknowledged in his deposition that the plaintiff's job demands were more rigorous than moving the wheelbarrow. In addition, the plaintiff testified that he visited the doctor on two occasions while on leave, receiving prescribed medication each time. The first visit was to the walk-in clinic on the evening of June 7. The plaintiff noted that he had been approved for FMLA leave on several previous occasions for the same serious health condition.

Moreover, Vacumet's private investigator did not obtain any evidence that plaintiff was working at his rental property while on sick leave on June 8, 9, and 11. Also, the plaintiff claims the last Chance Agreement would have prevented him from challenging a subsequent termination, would have required him to forfeit back pay for his period of suspension, and would have been an admission of guilt. Finally, the plaintiff stated he went through this procedure and that a neutral arbitrator addressed his termination pursuant to the collective bargaining agreement. The arbitrator found the disciplinary action was not justified and ordered reinstatement.[2] He was not reinstated, however, because the plant closed operations in 2009.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and

---

[2] Vacumet does not argue that evidence of the arbitrator's decision is inadmissible, only that the decision was made on a different record and evidence "in the grievance context," and that the "arbitral standards" differ from the "legal standards" applied in this case.

disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case

-7-

with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

The Family Medical Leave Act ("FMLA") allows eligible employees to take up to twelve weeks of unpaid leave for certain qualifying reasons. 29 U.S.C. § 2612(a)(1). The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (1) inpatient care in a hospital, hospice, or residential medical care facility, or (2) continuing treatment by

a health care provider." 29 U.S.C. § 2611(11). As the Court of Appeals for the Sixth Circuit has recognized, there are "two distinct theories of wrongdoing under the FMLA." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007) (citations omitted). First, there is the "entitlement" or "interference" theory, which arises from §§ 2615(a)(1) and 2614(a)(1), and makes "it unlawful for employers to interfere with or deny an employee's exercise of his FMLA rights (§ 2615(a)(1)), and which require the employer to restore the employee to the same or an equivalent position upon the employee's return (§ 2614(a)(1))." *Id.* (citations omitted). Second, there is the "retaliation" or "discrimination" theory, which arises from § 2615(a)(2), and "prohibits an employer from discharging or discriminating against an employee for opposing any practice made unlawful by the Act." *Id.* (internal quotations and citations omitted).

Plaintiff's FMLA claim raises both "retaliation" and "interference" as the basis for recovery. In general, the "interference" and "retaliation" theories are distinct, and blurring them is erroneous, though they do share a common element when the *prima facie* retaliation theory is at issue. *See, e.g., Weimer v. Honda of America Mfg., Inc.*, 356 F. App'x 812, 816-17 (6th Cir. 2009) (stating district court's instructions blending the two theories was erroneous but harmless). To establish an FMLA interference claim, a plaintiff must show that (1) he was an eligible employee,

(2) he was entitled to leave under the Act, (3) he provided notice of the need for leave;

and (4) his employer denied benefits under the Act. *Saroli v. Automation Modular*

*Components, Inc.*, 405 F.3d 446, 454 (6th Cir. 2005). To establish a *prima facie* claim

of retaliation under the FMLA, he must show that: (1) he was engaged in activity

protected under the FMLA; (2) the defendant knew that he was exercising his rights

under the FMLA; (3) after learning of his exercise of FMLA rights, the defendant took

an employment action adverse to him; and (4) there was a causal connection between

the protected FMLA activity and the adverse employment action. *See Arban v. West*

*Pub. Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). "The significant difference between

an interference and a retaliation claim is the causal connection element, which

encompasses an employer's intent. In contrast to the interference theory, under the

retaliation theory, 'the employer's motive is an integral part of the analysis.'" *Morris*

*v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 338 (6th Cir. 2009) (*quoting*

*Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir.2006)). Thus, with the interference

theory, employer intent is immaterial because the prohibited interference involves the

right to [FMLA] entitlement.

This Court will first address the retaliation theory. In the absence of

direct evidence that a defendant violated the FMLA, the *McDonnell Douglas*

burden-shifting framework applies. *See, e.g., Clark v. Walgreen Co.*, 424 F. App'x

Case 2:09-cv-00196-JRG-DHI   Document 47   Filed 01/26/12   Page 10 of 16   PageID #: 511

467, 473 (6th Cir. 2011); *Cutcher v. Kmart Corp.*, 364 F. App'x 183, 190 (6th Cir. 2010); *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). For the purposes of this motion only, the defendant concedes that the plaintiff has established a *prima facie* case for his retaliation theory. Thus, the burden shifts to the defendant to show that it had legitimate, nondiscriminatory reasons for suspending and then discharging the plaintiff. It offers several reasons for the discharge, namely that the plaintiff was observed working on his rental property while he was on sick leave. The defendant also states that plaintiff's other activities and the timing of his doctor visits support its conclusion that the plaintiff violated the two Level 3 offenses for which he was discharged. In addition, the defendant argues that plaintiff committed a Level 3 offense by refusing to answer the company's inquiries regarding the work on the rental property when he responded that it was none of the company's business.

Even if this Court concludes that there is no genuine issue of material fact as to the defendant's reasons, that does not end the inquiry. The burden shifts back to the plaintiff to show that the defendant's actions were pretextual discrimination. *See Texas Dept of Com. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In order to meet this burden, a plaintiff must show that: (1) a defendant's proffered reason had no basis in fact; (2) defendant's proffered reason did not actually motivate the action; or (3) that defendant's proffered reason was insufficient to motivate the action.

-11-

*Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994).

In addition, the defendant relies upon the "honest belief" rule. The general rule provides that "so long as the employer honestly believed in the proffered reason for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless." *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998). However, the Sixth Circuit employs a modified honest-belief approach. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 714 (6th Cir. 2007). In contrast to the "bare" honest-belief approach described above, in the Sixth Circuit "the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made" in order to avoid the finding that its claimed nondiscriminatory reason was pretextual. *Id.* (applying approach to race discrimination retaliation claim); *see also Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 526 (6th Cir. 2008) (in the ADEA context), *Smith*, 155 F.3d at 806–07(ADA). The court has explained:

> In determining whether an employer "reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned. Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." [ *Smith*, 155 F.3d at 807] (citing [ *Texas Dep't of Cmty. Affairs v.*] *Burdine*, 450 U.S. [248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)] ). Although we will not "micro-manage the process used by employers

-12-

in making their employment decisions," we also will not "blindly assume that an employer's description of its reasons is honest." *Id*. Therefore, "[w]hen the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." *Id*. at 807–08.

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006).

This case boils down to the plaintiff being fired for allegedly violating work rules regarding "Insubordination" and "Honesty and Integrity." The plaintiff claims his actions did not amount to such violations, and the defendant argues that his actions did. Essentially, there is a question of fact as to whether he actually violated the rules. Because of the Sixth Circuit's modified honest-belief rule, however, whether the plaintiff actually violated these rules is not the precise question before the Court. Instead, the Court must determine whether Vacumet made "a reasonably informed and considered decision before," *Smith*, 155 F.3d at 807, suspending and then terminating plaintiff's employment. However, if the plaintiff is able to produce sufficient evidence to establish that Vacumet failed to make a reasonably informed and considered decision before suspension and termination, thereby making its decisional process unworthy of credence, then Vacumet's reliance placed on such a process cannot be said to be honestly held. *Id*. at 807–08. Therefore, there would be

-13-

an issue of fact for trial.

Here, the plaintiff argues that he had come under increased scrutiny after leading the recent strike by Vacumet employees and for being heavily involved in the Union. Importantly, he argues that the basis for his termination was a 10 to 15 second observation of him removing trash from his rental property while he was on sick leave. In essence, he is arguing that termination on this basis is unreasonable. Of course, the defendant counters that the timing of his doctor visits, his actions at the rental property, his travel around the area and to church, and his "dismissive and defiant" responses all formed the basis for his termination.

It is true that Vacumet took several steps to investigate whether the plaintiff was abusing his sick leave. The company hired an investigator and gave the plaintiff several chances to respond to the accusations. In addition, Vacumet offered the plaintiff a Last Chance Agreement. This Court cannot say that Vacumet's actions were not planned and methodical. There apparently was a process in place to investigate such matters, and Vacumet did just that. Nonetheless, this Court cannot also say as a matter of law that the decision to terminate was "reasonably informed" and "considered." *Smith*, 155 F.3d at 807. The investigation merely revealed the 10 to 15 second observation, circumstantial evidence involving the timing of doctors visits, and an accused employee's reluctance to give up his perceived rights by

-14-

answering certain questions. Although it is a very close call, this Court FINDS that there is a genuine issue of material fact for trial regarding plaintiff's retaliation claim. Therefore, the defendant's motion in this regard is **DENIED**.

Finally, in regard to the interference claim, "[i]f an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." *Arban v. West Publishing Corp.*, 345 F.3d 390, 401 (6th Cir. 2003). However, the FMLA is not a strict liability statute. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). "An employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401.

The defendant argues that the plaintiff would have been discharged regardless of a request for leave because of dishonesty and insubordination. The defendant relies upon *Weimer v. Honda of America, Manufacturing*, 356 Fed. Appx. 812, 816 (6th Cir. 2008), for support. Again, to simplify the issue, the case boils down to whether his dismissal would have occurred regardless of his request for leave. Here, frankly, there is an issue of fact as to whether the plaintiff was insubordinate and dishonest. As such, this Court cannot find that dismissal would have occurred regardless of the request for leave. Therefore, the motion in this regard is **DENIED**.

-15-

## IV. CONCLUSION

For the reasons set forth above, the defendant's motion is denied. There

are genuine issues of material fact for trial.

ENTER:


s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE